Joyce WITZMAN, Respondent,

v.

**LEHRMAN, LEHRMAN & FLOM,**
et al., petitioners, Appellants.

No. C6–98–555.

Supreme Court of Minnesota.

Aug. 12, 1999.

William M. Hart, Bradley M. Jones, Mark A. Bloomquist, Jenneane L. Jansen, Meagher & Geer, P.L.L.P., Minneapolis, for appellants.

John F. Bonner, III, Amy E. Dawson, Malkerson Gilliland Martin L.L.P., Minneapolis, for respondent.

Louis A. Craco, Colin F. Bell, Willkie Farr & Gallagher, Richard I. Miller, General Counsel, American Institute of Certified Public Accountants, New York City, Charles E. Lundberg, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for amicus curiae The American Institute of Certified Public Accountants.

Jeffrey J. Lindquist, Pustorino, Tilton & Parrington, P.A., Minneapolis, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

PAUL H. ANDERSON, Justice.

At all times relevant to this action, respondent Joyce Witzman was a beneficiary

under three trusts for which her brother, Blair Wolfson, served as trustee. The present case stems from Witzman's allegations that, since 1978, Wolfson has repeatedly breached his fiduciary duty as trustee. Two years after settling her claims against Wolfson, Witzman filed a complaint against appellants, Lehrman, Lehrman & Flom and its partners, who, at all times relevant to this litigation, served as Wolfson's accountants. In addition to several other claims, Witzman alleged that appellants were jointly and severally liable for Wolfson's breach of trust under a theory of joint tortious conduct/aiding and abetting. Witzman also claimed that appellants participated in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968 (1994). The district court awarded summary judgment in favor of appellants, concluding that Witzman had failed to allege facts sufficient to establish her claims. The Minnesota Court of Appeals reversed, concluding that Witzman asserted cognizable claims against appellants for joint tortious conduct, violating the RICO Act, and common law fraud. We reverse.

At the time respondent Joyce Witzman commenced this litigation, she was a beneficiary under three trusts—the "Residuary Trust" and "Marital Trust" established by the will of her father, Wilfred Wolfson, and the "Revocable Trust" established by her mother, Elizabeth Wolfson. Witzman's brother, Blair Wolfson (Wolfson), was a co-beneficiary under each trust and was a trustee for each trust. At all times relevant to this litigation, appellants Lehrman, Lehrman & Flom, an accounting firm, and Harvey Flom, a certified public accountant, (collectively LL & F/Flom) served as the accountants for Wolfson in his personal capacity and in his capacity as trustee.

Wilfred Wolfson died in 1968 and his estate remained in probate for the next 10 years. In 1977, Wolfson and his mother, Elizabeth Wolfson, were appointed trustees of the Residuary Trust and Marital Trust. Wolfson also served as the personal representative of his father's estate and was responsible for transferring certain estate assets to the Residuary and Marital Trusts pursuant to the terms of Wilfred Wolfson's will and a 1978 Decree of Distribution issued by the Probate Division of the Hennepin County District Court.

In 1991, Elizabeth Wolfson created the Revocable Trust, which named Wolfson and Harvey Flom as trustees, but reserved for Elizabeth Wolfson complete authority over the trust until her death. Elizabeth Wolfson died in April 1992. Harvey Flom resigned his position as trustee shortly thereafter. Since that time, Wolfson has served as the sole trustee of each trust.

In 1993, Witzman commenced three separate actions against Wolfson, alleging that as trustee he had failed to provide accountings for the trusts, had paid himself excessive compensation and charged excessive fees to the trusts, had engaged in self-dealing and imprudent investments, and had taken advantage of opportunities as an individual that should have been opportunities for the trusts. From 1978 to 1993, no annual accountings for any of the trusts were filed with the probate court. In 1993 and 1994, in the wake of Witzman's trust litigation, Wolfson had LL & F/Flom prepare financial accountings for the trusts for the years 1978 to 1993. A disclaimer attached to these accountings stated that the accountings were "intended solely for the information and use of the Trustee, the beneficiaries and the District Court."

Wolfson and Witzman reached a mediated settlement (Settlement Agreement) in 1994. Per the terms of the Settlement Agreement, Witzman was to receive approximately $4 million in trust assets and, in exchange, agreed to relinquish her rights as a beneficiary of the trusts. Upon payment of the agreed-upon assets to Witzman, the residue of the trusts was to be transferred to Wolfson with the trusts then being terminated. Both parties agreed to release one another from any continuing obligations under the trusts and

to dismiss the action with prejudice and on the merits. The Settlement Agreement was approved by the probate court in November 1994.

In 1995, Witzman filed a motion in probate court to compel performance under the Settlement Agreement and for reformation of that agreement. She argued that Wolfson had breached the terms of the agreement by failing to transfer certain trust assets to her "forthwith," that Wolfson had made material misrepresentations concerning trust assets, and that the Settlement Agreement should be set aside due to the mutual mistake of the parties. The court denied Witzman's motion.

In mid–1996, Witzman commenced the present action against LL & F/Flom. In her original complaint, she alleged that LL & F/Flom were liable to her on grounds of professional negligence, negligent misrepresentation, "Aiding and Abetting Breach of Trusts," and violation of the RICO Act, 18 U.S.C. §§ 1961–1968. Witzman also filed a complaint against Wolfson's attorney asserting claims based on the same four theories. Wolfson's attorney removed the action against him to federal district court. In June 1997, the federal district court granted summary judgment in favor of the attorney on all counts. On appeal, the Eighth Circuit Court of Appeals affirmed the district court. *See Witzman v. Gross,* 148 F.3d 988 (8th Cir.1998).

In July 1997, LL & F/Flom moved for summary judgment in the state district court. Although LL & F/Flom cited both Minn. R. Civ. P. 12 and 56 in support of their motion and submitted several documents to be entered into the record, LL & F/Flom's accompanying memorandum alleged only that Witzman's complaint failed to state a claim upon which relief could be granted. In response, Witzman moved to amend her complaint and to join Wolfson as a defendant. Along with her amended complaint, Witzman also submitted for the record numerous documents detailing various trust transactions and asset valuations.

In her proposed amended complaint, Witzman set forth additional facts allegedly evidencing Wolfson's various breaches of trust. The complaint alleged that LL & F/Flom participated in these breaches by failing to disclose Wolfson's allegedly tortious activity, by "prepar[ing] trust 'draw' accounts" from which Wolfson withdrew money from the Marital Trust for personal use, by doing nothing to prevent Wolfson from charging excessive fees and compensation to the trusts, and by failing to disclose that Wolfson had not transferred certain assets from his father's estate to the trusts as required by the 1978 Decree of Distribution. Based on these allegations, Witzman repeated her claims of professional negligence, negligent misrepresentation, and RICO Act violations. Witzman reasserted her aiding and abetting claim under the new heading, "Joint Tortious Conduct/Aiding and Abetting Breach of Trust." Her amended complaint also asserted a new claim against LL & F/Flom for breach of trust. LL & F/Flom opposed Wolfson's motion to amend her complaint on substantive grounds, arguing that the allegations therein, even if taken as true, still failed to state a claim upon which relief could be granted.

LL & F/Flom's motion for summary judgment was granted by the district court in November 1997. The court concluded that, because "no confidential or fiduciary relationship existed between [Witzman] and [LL & F/Flom]" and Witzman "was never an intended recipient of accounting services performed by [LL & F/Flom]," LL & F/Flom owed no duty of care to Witzman on which to base the professional negligence and negligent misrepresentation claims. The court also concluded that Minnesota did not recognize a "common law cause of action for 'aiding and abetting'" tortious conduct and that Witzman had failed to establish a claim for joint tortious conduct because her complaints "failed to state any facts upon which a claim could exist that defendant had knowledge of or participated in any plan to harm plaintiff personally." The court also

granted summary judgment on the RICO claim, concluding that LL & F/Flom's provision of the "run-of-the-mill accounting services" alleged in Witzman's complaint was insufficient to constitute "participation in the management or operation of" a racketeering enterprise. With respect to Witzman's motion to amend her complaint, the court concluded that the allegations in the amended complaint, even if taken as true, were still insufficient to overcome the "legal insufficiency" of Witzman's purported causes of action and that the Settlement Agreement and the 1994 probate court order precluded Witzman from asserting claims against either Wolfson or Harvey Flom as trustees.[1]

On appeal, the court of appeals affirmed summary judgment in favor of LL & F/Flom with respect to the counts of negligence and misrepresentation, but the court of appeals reversed the district court on the remaining counts and remanded the case for trial. The court of appeals also held that the district court abused its discretion when it denied Witzman's motion to amend her complaint, concluding that Witzman's amended complaint "states a cognizable claim alleging fraud."

On appeal to our court, neither party disputes the court of appeals' affirmance of summary judgment in favor of LL & F/Flom on the counts of professional negligence and negligent misrepresentation. LL & F/Flom, however, argue that the court of appeals erred in reversing summary judgment on the joint tortious conduct/aiding and abetting count because Minnesota law does not recognize such claims with respect to professionals. LL & F/Flom also assert that the court of appeals erred in reversing summary judgment on the RICO claim, arguing that Witzman's complaints fail to allege facts sufficient to support such a claim. Finally, LL & F/Flom assert that the district court did not abuse its discretion in denying Witzman's motion to amend her complaint and the court of appeals erred in concluding that Witzman's amended complaint stated a cognizable claim of fraud against LL & F/Flom.

## I.

This case requires us to review an order for summary judgment. The standard typically employed for reviewing such an order is well recognized: the reviewing court must determine whether genuine issues of material fact exist and "whether the trial court erred in its application of the law." *See Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

■ The present case, however, presents a procedural dilemma. Although LL & F/Flom labeled their motion as one for summary judgment under Minn. R. Civ. P. 56.03, LL & F/Flom do not cite to any factual deficiency in the record or point to any part of the record in support of an assertion that no genuine issues of material fact exist. Rather, LL & F/Flom's sole assertion in support of their motion is that the factual allegations in Witzman's complaint, even if taken as true, are insuffi-

1. The continuing status and effect of the Settlement Agreement and the 1994 probate court order are uncertain. In August 1997, Witzman filed a separate action against Wolfson in state district court alleging that Wolfson had breached the Settlement Agreement by failing to cooperate in Witzman's litigation against LL & F/Flom and that Wolfson had fraudulently induced her into signing the Settlement Agreement. She asked that the court vacate the probate court's 1994 final settlement order. Wolfson moved for summary judgment and the district court granted the motion. Witzman appealed. On the same date the court of appeals issued its decision in the present case, a separate panel of that court reversed the grant of summary judgment in Witzman's action against Wolfson as well. *See Witzman v. Wolfson,* No. C7–98–421, 1998 WL 713484 (Minn.App. Oct.13, 1998), *rev. denied* (Minn. Dec. 22, 1998). While the panel addressing Witzman's claims against Wolfson did not vacate the 1994 probate court order, it did remand the case for trial to determine whether Wolfson had breached the agreement or whether Wolfson had fraudulently induced Witzman into signing it. *Id.*

cient to state a claim upon which relief can be granted. In that sense, LL & F/Flom's motion is more akin to a motion to dismiss for failure to state a claim under Minn. R. Civ. P. 12.02(e) than a traditional motion for summary judgment.

The Eighth Circuit Court of Appeals addressed a similar dilemma in *Handeen v. Lemaire,* 112 F.3d 1339 (8th Cir.1997). There, as here, the respondent had moved for summary judgment, but "chose to eschew reliance on the recently alleged absence of a 'factual record warranting trial,' and instead emphasized what were perceived to be 'an array of patently untenable legal theories.'" *Id.* at 1346 (citations omitted). The respondent accepted as true the allegations in the complaint. *See id.* Citing the United States Supreme Court, the Eighth Circuit recognized that "one who moves for summary judgment 'always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record * * *] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (alteration in original). In light of this recognition, the Eighth Circuit concluded, "[o]nly after the moving party fulfills its duty is the nonmoving party obliged to 'proffer evidence that contradicts the moving party's showing and that proves the existence of a genuine issue of material fact.'" *Id.* (quoting *McKinney v. Dole,* 765 F.2d 1129, 1135 (D.C.Cir.1985)). The court concluded that "it would be entirely unfair to hold [appellant] accountable for a factual showing that would, under normal circumstances, be inadequate." *Id.* at 1345. The solution, the court held, was to review the respondent's motion under the standard applicable to reviewing a motion to dismiss a suit for failure to state a claim. *Id.* at 1347.

■ We find the reasoning of the Eighth Circuit persuasive. Because in substance LL & F/Flom's motion was akin to a motion to dismiss for failure to state a claim upon which relief can be granted, the proper standard of review in this case is the one typically employed for motions brought under Minn. R. Civ. P. 12.02(e). Applying this standard, the question before us is whether Witzman's complaints set forth a legally sufficient claim for relief; it is immaterial whether or not Witzman can prove the facts alleged. *See Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980).

## II.

Witzman bases her claim of "joint tortious conduct/aiding and abetting breach of trust" on *Restatement (Second) of Torts* § 876(b) (1977), which provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> * * * *
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]

In their original motion, LL & F/Flom asserted that such a claim, which for convenience sake we will hereinafter refer to as aiding and abetting, does not exist under Minnesota law. As support, LL & F/Flom cited *D.W. v. Radisson Plaza Hotel Rochester,* 958 F.Supp. 1368 (D.Minn. 1997), where the federal district court stated that "[i]n Minnesota, there is no common law cause of action for 'aiding and abetting.'" *See id.* at 1380. The federal court, however, cited no Minnesota authority for this proposition, and neither has LL & F/Flom cited any case where we refused to recognize a claim based on aiding and abetting the tort of another.

■ Contrary to what LL & F/Flom assert, Witzman does not ask us to recognize a new cause of action. We have long relied on the "well recognized" rule "'that all who actively participate in any manner in the commission of a tort, or who procure, command, direct, advise, encourage,

aid, or abet its commission, or who ratify it after it is done are jointly and severally liable' for the resulting injury." *Greenwood v. Evergreen Mines Co.,* 220 Minn. 296, 309, 19 N.W.2d 726, 733 (1945) (quoting *Virtue v. Creamery Package Mfg. Co.,* 123 Minn. 17, 40, 142 N.W. 930, 939 (1913)). Moreover, we have, on more than one occasion, cited section 876 of the *Restatement (Second) of Torts* and addressed the requirements for establishing a valid claim thereunder. *See Leaon v. Washington County,* 397 N.W.2d 867, 872 (Minn. 1986) (holding that the facts failed to support a valid claim based on section 876); *Olson v. Ische,* 343 N.W.2d 284, 289 (Minn. 1984) (same). Thus, at least in some circumstances, Minnesota law does recognize a claim based on aiding and abetting the tortious conduct of another.

■ Still, we have never before applied section 876 in a case involving the liability of professionals for aiding and abetting the torts of their clients. LL & H/Flom argue that for reasons of law and public policy, we should grant accountants immunity from such liability.

We recognize the potential policy concerns associated with subjecting professionals to aiding and abetting liability. If professionals have reason to believe that they may be held liable for their clients' torts merely by providing routine professional services to their clients, the professionals may face a conflict between serving their clients and protecting their own interests. Thus, applying aiding and abetting liability to professionals has the potential to undermine the trust essential to any professional-client relationship.

Because of similar conflict of interest concerns, we have historically limited the liability of attorneys to nonclients for acts of professional negligence and have held that, as a general rule, attorneys do not owe a duty of care to nonclients. *See, e.g., L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 378 (Minn.1989); *Marker v. Greenberg,* 313 N.W.2d 4, 5 (Minn.1981). LL & F/Flom cite these cases as support-

ing the exclusion of professionals from aiding and abetting liability. In response, we first note that cases involving attorneys are not per se analogous to cases involving accountants; the attorney-client relationship involves considerations not present in the accountant-client relationship and vice versa. To the extent the attorney negligence cases are applicable to the present facts, we are not persuaded that these cases require us to exclude accountants as a class from aiding and abetting liability.

■ Unlike negligence-based claims, aiding and abetting liability does not require the existence of, nor does it create, a pre-existing duty of care to a third party nonclient. Rather, aiding and abetting liability is based on proof of a scienter—the defendants must *know* that the conduct they are aiding and abetting is a tort. *See Restatement (Second) Torts* § 876(b). As a general rule, we have not excluded professionals from liability to nonclients for knowing or intentional torts. *See L & H Airco,* 446 N.W.2d at 379 (recognizing that attorneys can be held liable to nonclients for fraud); *Bonhiver v. Graff,* 311 Minn. 111, 123, 248 N.W.2d 291, 298–99 (1976) (recognizing that accountants can be liable for misrepresentations to intended third party recipients whom the accountants know are relying on the representations).

Similarly, most courts in addressing this specific issue have not excluded professionals from aiding and abetting liability. Indeed, courts have recognized the legitimacy of aiding and abetting claims against both attorneys and accountants. *See Department of Econ. Dev. v. Arthur Andersen & Co.,* 924 F.Supp. 449, 483 (S.D.N.Y. 1996) (concerning accountants); *Holmes v. Young,* 885 P.2d 305, 309 (Colo.Ct.App. 1994) (concerning attorneys); *Spinner v. Nutt,* 417 Mass. 549, 631 N.E.2d 542, 546 (1994) (same); *Granewich v. Harding,* —— P.2d ——, 329 Or. 47, 1999 WL 482646 (1999) (same). Rather than refuse to recognize such claims, these courts have relied on strict interpretation of the elements

of aiding and abetting to preclude meritless claims. *See, e.g., Spinner,* 631 N.E.2d at 546–47; *Schatz v. Rosenberg,* 943 F.2d 485 (4th Cir.1991).[2]

■ Like these courts, we are not convinced that public policy requires a wholesale exclusion of professionals from aiding and abetting liability. To grant professionals such immunity would conceivably give them free reign to provide any assistance short of fraud in helping clients engage in conduct the professionals know to be tortious. However, we are also mindful of the policy concerns raised by subjecting professionals to aiding and abetting liability. Accordingly, in cases where aiding and abetting liability is alleged against professionals, we will narrowly and strictly interpret the elements of the claim and require the plaintiff to plead with particularity facts establishing each of these elements. With this standard in mind, we now turn to review whether Witzman's pleadings are sufficient to support her claim that LL & F/Flom aided and abetted Wolfson's breach of trust.

## III.

■ A claim for aiding and abetting the tortious conduct of another has three basic elements:

(1) the primary tort-feasor must commit a tort that causes an injury to the plaintiff;

(2) the defendant must know that the primary tort-feasor's conduct constitutes a breach of duty; and

(3) the defendant must substantially assist or encourage the primary tort-

feasor in the achievement of the breach.

*See Restatement (Second) Torts* § 876(b); *Ezzone v. Riccardi,* 525 N.W.2d 388, 398 (Iowa 1994).

■ With respect to the first element of an aiding and abetting claim, both Witzman's original and amended complaints (complaints) recount specific· instances allegedly showing that Wolfson—the alleged primary tortfeasor—breached his fiduciary duties. The complaints allege that Wolfson failed to provide annual accountings of the trusts to the probate court, received substantial compensation from the trusts, engaged in self-dealing with the trusts, purchased trust assets at below market interest rates with no money down, and withdrew trust money for personal use. The complaints and the supporting documents Witzman attached thereto also assert that Wolfson, as representative of his father's estate, failed to convey certain property from the estate to the Residuary Trust and Marital Trust as set forth in the 1978 Decree of Distribution.

These allegations, if taken as true, are sufficient to satisfy the first element of an aiding and abetting claim. Wolfson's failure to provide annual accountings of the Residuary Trust and Marital Trust to the probate court was seemingly a facial violation of Minn.Stat. § 501B.23 (1998) (previously codified as Minn.Stat. § 501.34). Although none of the other alleged actions constitute facial violations of statutes or trust or estate documents, taken as true, they at least present a colorable claim that Wolfson breached his fiduciary duty as trustee.

2. Much of the judicial commentary on and analysis of the elements of section 876(b) comes from federal cases addressing private claims asserted against defendants who allegedly aided and abetted another in violating section 10(b) of the Securities and Exchange Act of 1934. *See, e.g., Camp v. Dema,* 948 F.2d 455, 459 (8th Cir.1991); *Schatz,* 943 F.2d at 495–96; *Woodward v. Metro Bank,* 522 F.2d 84, 94–95 (5th. Cir.1975). In 1994, the United States Supreme Court, relying on the language of section 10(b), held that the section did not permit a private cause of action for aiding and abetting a securities violation. *See Central Bank v. First Interstate Bank,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Nevertheless, the reasoning and analysis employed by the lower federal courts regarding section 876(b) remains persuasive authority on the elements of common law aiding and abetting liability.

 Having concluded that Witzman alleged sufficient facts to establish the first element of an aiding and abetting claim, we must now look to the sufficiency of her allegations with respect to the remaining two elements of that claim—knowledge and substantial assistance. "We evaluate [these elements] in tandem." *See In re TMJ Implants Products Liability Litigation,* 113 F.3d 1484, 1495 (8th Cir.1997). Thus, "where there is a minimal showing of substantial assistance, a greater showing of scienter is required." *Camp v. Dema,* 948 F.2d 455, 459 (8th Cir.1991). Whether the requisite degree of knowledge or assistance exists depends in part on the particular facts and circumstances of each case. *See id.* Factors such as the relationship between the defendant and the primary tortfeasor, the nature of the primary tortfeasor's activity, the nature of the assistance provided by the defendant, and the defendant's state of mind all come into play. *See Restatement (Second) Torts* § 876(b), cmt. d; *see also* 948 F.2d at 459.

Given that LL & F/Flom have served as Wolfson's accountants for over three decades, it is arguably permissible to infer from the facts alleged in Witzman's complaints that LL & F/Flom knew of Wolfson's dealings with the trusts' assets. To state a cognizable claim against LL & F/Flom for aiding and abetting, however, Witzman also must allege specific facts showing that LL & F/Flom knew the tortious nature of Wolfson's dealings.

In cases where the primary tortfeasor's conduct is clearly tortious or illegal, some courts have held that a defendant with a long-term or in-depth relationship with that tortfeasor may be deemed to have constructive knowledge that the conduct was indeed tortious. *See, e.g., Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 283–84 (2d Cir.1992). However, where the conduct is not a facial breach of duty, courts have been reluctant to impose liability on an alleged aider and abettor for anything less than actual knowledge that the primary tortfeasor's conduct was wrongful. *See Future Group II v. NationsBank,* 324 S.C. 89, 478 S.E.2d 45, 50 (1996) (holding that a defendant could not be charged with knowledge that a primary tortfeasor's conduct was a breach of duty when the acts were not facial violations of the primary tortfeasor's duty); *see also Kolbeck v. LIT America, Inc.,* 939 F.Supp. 240, 246 (S.D.N.Y.1996), aff'd. 152 F.3d 918 (2d Cir.1998) (holding that under New York common law section 876(b) requires a showing of actual knowledge).

In the present case, even if Witzman's allegations are taken as true, most of Wolfson's activities regarding the trusts were not clear violations of the broad discretionary authority he held as trustee. Thus, LL & F/Flom may have reasonably believed that these allegedly tortious dealings were legitimate exercises of Wolfson's discretion as trustee. Indeed, Wolfson's only facial breach of duty was his alleged failure to provide the probate court with annual accountings for the Residuary Trust and Marital Trust as required by Minn.Stat. § 501B.23.[3] However, even assuming that, as certified accountants, LL & H/Flom should have known that Wolfson had a duty to provide such accountings, it does not necessarily follow that LL & H/Flom also should have known that Wolfson's underlying dealings with trust assets were themselves tortious. Under these alleged facts, we cannot infer that LL & F/Flom had actual knowledge that Wolfson was engaging in tortious conduct damaging to Witzman.

Further, Witzman's allegations concerning LL & F/Flom's participation in Wolfson's activities, even if taken as true, fail to establish that LL & F/Flom provided "substantial assistance" to Wolfson in the commission of any tort. In addressing

---

**3.** Wolfson's failure to provide accountings for the Revocable Trust was not a facial violation of his fiduciary duty. The trust specifically provided that the trustees need not be confirmed by the court and would not be obligated to provide annual accountings.

aiding and abetting liability in cases involving professionals, most courts have recognized that "substantial assistance" means something more than the provision of routine professional services. *See, e.g., Spinner*, 631 N.E.2d at 546 (holding that "an allegation that the trustee acted under the legal advice of the defendant, without more, is insufficient"); *Schatz*, 943 F.2d 485. In any event, "[t]he mere presence of the particular defendant at the commission of the wrong, or his failure to object to it, is not enough to charge him with responsibility." *Olson*, 343 N.W.2d at 289 (quoting *Stock v. Fife*, 13 Mass.App.Ct. 75, 430 N.E.2d 845, 849 n. 10 (1982)) (other citations omitted).

The only "assistance" alleged in Witzman's complaints and supported by allegations of specific fact is LL & F/Flom's performance of routine accounting duties—i.e., preparing financial statements, setting up draw accounts, recording conveyances, and providing tax advice—without disclosing Wolfson's dealings to Witzman. If we were to recognize that such routine services constitute substantial assistance, then it would be the rare accountant indeed who would not be subject to automatic liability merely because his client happened to be a tortfeasor. Moreover, because Witzman was not LL & F/Flom's client and Witzman's allegations are insufficient to show that LL & F/Flom had actual knowledge that Wolfson was using the trusts' assets to Witzman's detriment, LL & F/Flom's failure to disclose Wolfson's business dealings to Witzman does not rise to the level of substantial assistance. Accordingly, we conclude that Witzman's allegations are insufficient as a matter of law to state a cognizable claim that LL & F/Flom provided substantial

assistance to Wolfson in the commission of any tortious activity. Because Witzman failed to allege specific facts supporting her assertion that LL & F/Flom had actual knowledge that Wolfson was committing torts damaging to Witzman or that LL & F/Flom provided anything other than routine accounting services to Wolfson, we hold that Witzman has failed to state a colorable claim against LL & F/Flom for aiding and abetting Wolfson's breach of trust.[4]

### IV.

 In her complaints, Witzman also asserted that LL & F/Flom's activities concerning the trusts constituted participation in a pattern of racketeering activity in violation of the RICO Act, 18 U.S.C. §§ 1961–1968 (1994). Insofar as it is pertinent, the RICO Act provides:

> It shall be unlawful for any person employed by or associated with any enterprise * * * to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.

18 U.S.C. § 1962(c) (1994). The United States Supreme Court has interpreted the term "participate" as used in the RICO Act as applying to a narrower range of actions than those sufficient to constitute common law aiding and abetting. *See Reves v. Ernst & Young*, 507 U.S. 170, 178, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). To be found guilty of a RICO violation, "one must participate in the *operation or management* of the enterprise itself." *Id.* (emphasis added). Relying on *Reves*, the Eighth Circuit Court of Appeals has recognized that:

4. We recognize that we are applying a new pleading standard, but we conclude that it is not necessary to remand this case to permit Witzman to amend her complaint in light of our holding. Both Witzman's original and amended complaints are lengthy documents that recount numerous examples of Wolfson's and LL & F/Flom's allegedly tortious activity in great detail. Moreover, in her motion in opposition to summary judgment, Witzman asserted that her amended complaint contained specific factual examples establishing each element of her aiding and abetting claim. Accordingly, we are confident that Witzman has already asserted her allegations with great particularity, and do not believe that equity requires that she be given a third opportunity to rephrase the same allegations.

Furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in *Reves.* * * * [A]n attorney or other professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services.

*Handeen,* 112 F.3d at 1348.

In *Handeen,* the Eighth Circuit held that the appellant had alleged sufficient facts to state a colorable RICO claim against a law firm. *See id.* at 1349. There, however, the complaint specifically alleged that the defendant law firm had instructed its client to overstate his debts and to hide his increased income to avoid the appellant's collection action. *See id.* at 1344. The court concluded that, from these allegations, a reasonable jury could infer that the client "controlled his estate in name only and relied upon the Firm, with its legal acuity, to take the lead in making important decisions concerning the operation of the enterprise." *Id.* at 1350.

■ In the present case, Witzman's complaint only makes a bare allegation that LL & F/Flom had "managerial" power over the trusts at all times relevant to the alleged racketeering activity. Witzman's specific factual allegations indicate that LL & F/Flom's alleged participation in Wolfson's operations involved nothing more than preparing financial statements, providing tax advice, setting up draw accounts, and recording conveyances. Even if taken as true, these allegations fail to support an inference that LL & F/Flom engaged in anything other than routine accounting activities. Accordingly, we hold that Witzman has failed to state a colorable claim of a RICO violation.

## V.

■ LL & F/Flom also argue that the court of appeals erred in concluding that Witzman's amended complaint "states a cognizable claim alleging fraud" because the amended complaint alleged that "[LL & F/Flom] represented that his trust accountings included all of the estate assets, when in fact some estate assets were never conveyed to the trusts."

■ Allegations of fraud must be alleged with particularity. *See* Minn. R. Civ. P. 9.02. Our review of Witzman's amended complaint shows that Witzman has not specifically alleged that LL & F/Flom ever represented that the trust accountings included all of the estate assets. The only reference the accountings make to the transfer of assets from the estate provides that "[a]ssets [valued in the accountings] are initially included in inventory at amounts shown on the records of the Estate * * * for assets transferred on May 31, 1978." Thus, the accountings only purport to account for assets that actually were transferred to the trusts.

Witzman's amended complaint alleges that "[t]he LL & F/Flom accountings *omit* to state that any of the assets shown on the records of the Estate * * * were not conveyed to the trust and constitute an affirmation of fact that all of the assets enumerated on the Decree of Distribution for the * * * estate were in fact conveyed to the Trusts." (Emphasis added.) Although deftly worded, this allegation merely asserts that LL & F/Flom committed fraud by failing to disclose information to Witzman.

■ For nondisclosure to constitute fraud, "there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him." *Richfield Bank & Trust Co. v. Sjogren,* 309 Minn. 362, 366, 244 N.W.2d 648, 650 (Minn.1976). In most circumstances, professionals have no duty to disclose information concerning a client to a nonclient. On rare occasions, however, we have imposed just such a duty. In *Richfield Bank & Trust,* for example, we held that a bank that through its loan officer had knowledge of a deposi-

tor's irretrievable insolvency had a duty to disclose that fact to the respondent prior to lending money to that respondent to purchase goods from the depositor. *Id.* at 366, 244 N.W.2d at 651–52. The linchpin of that case was the fact that the evidence supported an inference that the bank had "actual knowledge" that the depositor was attempting to commit fraud. *See id.*

In the present case, Wolfson's sale of estate assets may have been an abuse of discretion, but was not facially fraudulent. Thus, even if we take Witzman's allegations as true and assume that Wolfson did sell estate assets, this assumption does not justify an inference that LL & F/Flom had actual knowledge that this activity was tortious. To conclude otherwise would be tantamount to requiring professionals wanting to avoid lawsuits to disclose any of their clients' activities that could arguably be considered unreasonable. Such a requirement would effectively destroy the trust essential to the professional-client relationship. We hold that LL & F/Flom had no duty to disclose the fact that Wolfson had previously sold estate assets and, therefore, Witzman's allegations of fraud fail as a matter of law, and the district court did not abuse its discretion in denying Witzman's motion to amend her complaint.

Reversed.