# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-1731
_____

Allan M. Schreier, individually, as beneficiary and Co-Trustee of the John J. Schreier Revocable Intervivos Trust and of the Ann Barbara Schreier Revocable Intervivos Trust, and as Co-Personal Representative of the Ann Barbara Schreier Estate

*Plaintiff - Appellant*

v.

Drealan Kvilhaug Hoefker & Co. P.A.; Hedeen Hughes and Wetering

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 15, 2021
Filed: March 26, 2021
_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Allan M. Schreier appeals the district court's[1] grant of summary judgment to defendants Hedeen Hughes & Wetering (HHW) and Drealan Kvilhaug Hoefker & Co. P.A. (DKH). *See Schreier v. Drealan Kvilhaug Hoefker & Co. P.A.*, 2020 WL 1442004 (D. Minn. Mar. 24, 2020). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

John and Barbara Schreier, now deceased, owned a 700-acre farm in Minnesota. They had three children: Allan, Carl, and Paul. While John and Barbara were alive, Carl and Paul (and after Paul died in 2011, his widow Michelle) paid rent to use the farmland.

In 1992, John and Barbara placed the farmland into two trusts, one in each of their names. They hired the law firm HHW to prepare the trust documents. Over the years, HHW did additional estate planning for John and Barbara.

In 2009, John, Barbara, and their sons met at HHW to discuss the trusts. After the meeting, the children hired another law firm to opine on the sufficiency of the trusts. The firm confirmed the trusts were appropriate and could not be improved.

In 2010, Allan raised concerns that Carl and Paul were not paying enough rent for the farmland. He met with Barbara and certified public accountant Cindy Penning of DKH to discuss his concerns.

In 2012, Allan again raised concerns about the rent. Barbara asked Penning for advice about the reasonableness of the rent. Penning gave Barbara a public report from the University of Minnesota showing average rents for farmland between 2006 and 2010. For that period, the median rent in the county was $150, the amount Carl

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

and Michelle were paying. Penning opined that the rent was reasonable. Barbara did not adjust it.

That same year, John died. Allan and Carl became co-trustees of John's trust; Barbara was the beneficiary. Penning prepared the Minnesota estate tax return, consulting with Bill Wetering of HHW about the trust. There is no evidence Wetering or anyone at HHW provided legal advice on the tax return. The return was due January 17, 2013. After an extension, Penning filed it on January 30th. She did not declare a "Q" deduction because she did not believe it was applicable in January 2013. A few months later, the legislature amended the law, making the "Q" deduction applicable to John's tax return.

Later that year, Allan emailed Wetering as "the trust's attorney" to discuss concerns with Carl's administration of John's trust. They did not meet to discuss the trust. There is no evidence Wetering responded substantively to the email. Allan did not retain Wetering to represent him personally.

Barbara died in 2014. After her death, Allan continued to be concerned that Carl and Michelle were paying unreasonably low rents and harming the trust. He retained attorney Paul Stoneberg to represent him. Allan told Stoneberg that Wetering had opined that Carl was self-dealing to the detriment of the trust. Stoneberg later withdrew from representing Allan.

In 2015, Penning filed the Minnesota tax return for Barbara's estate. Due to the change in the law, she determined the "Q" deduction applied, and she claimed it.

Over the next few years, Allan sued Carl and Michelle in state court for several claims including breach of promissory note and unreasonably low rents. The parties settled and signed a mutual release relating to "any and all claims" arising out of the trusts.

This case arises from claims Allan filed against DKH and HHW in conciliation court alleging professional malpractice and negligence. Specifically, he alleged that DKH engaged in accounting malpractice by failing to claim the "Q" deduction on the tax return for John's estate and that HHW engaged in legal malpractice by providing inaccurate advice to DKH about that tax return. The court entered judgment for DKH and HHW, noting the lack of expert testimony supporting the claims. He appealed to the state district court, adding claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging DKH and HHW aided and abetted Carl in the breach of his fiduciary duties. DKH and HHW removed the action to federal court and asserted counterclaims for breach of contract, unjust enrichment, and quantum meruit.

The parties moved for summary judgment. The district court granted summary judgment to HHW and DKH on all claims. Allan appeals.

II.

Allan believes the district court erred in granting summary judgment to DKH on his accounting malpractice claim. He argues that DKH should either have claimed the "Q" deduction or waited to file until after the deduction applied to John's tax return. This court reviews de novo. *See **Butts v. Continental Cas. Co.***, 357 F.3d 835, 837 (8th Cir. 2004).

Minnesota law requires two affidavits to support claims of professional malpractice. *See **Minn. Stat. § 544.42*** (requiring an "[a]ffidavit of expert review" and an affidavit "[i]dentifying experts to be called" in "an action against a professional alleging negligence or malpractice in rendering a professional service"); ***Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff and Hobbs, Ltd.***, 783 N.W.2d 733, 739 (Minn. Ct. App. 2010) ("But-for causation cannot be established without the assistance of an expert witness 'when the causal relation issue is not one within the common knowledge of laymen.'"), *quoting **Walstad v. University of Minn. Hosps.***, 442 F.2d 634, 639 (8th Cir. 1971). First, a

-4-

plaintiff must submit an "[a]ffidavit of expert review," that an expert has reviewed "the facts of the case" and opines that "the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff." **Minn. Stat. § 544.42, subd. 3(a)(1)**. Second, a plaintiff must submit an affidavit identifying "each person whom the attorney expects to call as an expert witness," including the "substance of the facts and opinions to which the expert is expected to testify" and "a summary of the grounds for each opinion." *Id*. **§ 544.42, subd. 4(a)**. The second affidavit must recite "the acts or omissions which the plaintiff alleges resulted in a violation of the standard of care, and an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages." *Stroud v. Hennepin Cty. Med. Ctr.*, 556 N.W.2d 552, 556 (Minn. 1996). *See Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 577 (Minn. 1999) (holding that at a minimum, the affidavit must disclose "specific details concerning their experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation"). A high level of specificity is necessary to satisfy the causation requirement of an expert affidavit. *See, e.g.*, *Maudsley v. Pederson*, 676 N.W.2d 8, 14 (Minn. App. 2004) (noting the "strict standard for expert affidavits" whose "primary purpose" is "to illustrate 'how' and 'why' the alleged malpractice caused the injury").

To establish his claim, Allan relied on the testimony of expert Christopher Wittich, who asserted that DKH should have claimed the "Q" deduction on John's estate tax return in January 2013, when the land was owned by John's trust. The law at that time required that the "decedent continuously owned the property for the three-year period ending on the date of death of the decedent." **Minn. Stat. § 291.03, subd. 10(3)**. According to Wittich, the trust's ownership of the property satisfied this requirement.

In granting summary judgment to DKH, however, the district court noted that Wittich's "opinion is effectively rebutted by DKH's expert, Jeffrey Whitmore, and, more notably undermined by the Minnesota legislature's subsequent amendment to

the law." Allan claims the district court erred in considering "rebuttal expert affidavits" in its grant of summary judgment. *See Demgen v. Fairview Hosp.*, 621 N.W.2d 259, 267 (Minn. Ct. App. 2001) ("We conclude that the district court erred in relying on a defendant's rebuttal expert affidavit in balancing and weighing (as if by a 'mini-trial within a trial') Dr. Soderberg's expert affidavit to see if it met the statutory requirements of Minn. Stat. § 145.682, subd. 4(a).").

Allan is correct that using DKH's expert to invalidate his expert is improper at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). However, the district court's order makes clear that its grant of summary judgment relied not on the opinion of DKH's expert, but rather on the plain language of Minn. Stat. § 291.03 in January 2013. Although the court stated that "Whitmore persuasively explained why the Q deduction did not apply to John's estate return," it relied not on Whitmore's opinion, over Wittich's, but rather on the law itself. Though quoting Whitmore's opinion, the district court made these legal conclusions:

> Under Minn. Stat. § 291.03 Subd. 10[3] (2012), the law in force when John Schreier's estate tax return was filed, the M706Q election could be made only in a situation where "the decedent continuously owned the property for the three year period ending on the date of death of the decedent." In this situation, the property was owned by the John J. Schreier Revocable Intervivos Trust, not by the decedent John Schreier. Since the property was not titled in decedent's name for three years prior to the date of death, it would not meet the strict statutory requirements for making the M706Q election.

The court also noted the law's subsequent amendment which expanded the definition of qualified farm property to include farmland "owned by a person or entity." **Minn. Stat. § 291.03, subd. 10(2)**. The court said it was "unpersuaded by Wittich's claim that the legislature simply amended the law in 2013 to clarify the statute's meaning" because Wittich's report ignores "the statute's plain language,

both pre- and post-amendment" and includes no evidentiary support.  It then stated that "Wittich's opinion is further undermined by the Minnesota Department of Revenue's pre-amendment Estate Tax Fact Sheet explaining the Q deduction" because the fact sheet does not indicate that a trust qualifies as a "decedent" for purposes of the deduction.  The court concluded by noting that Wittich "cites to no other cases in which the deduction was successfully claimed pre-amendment for trust-owned farmland, nor does he offer any other kind of evidence to bolster his baldly stated opinion."

Contrary to Allan's assertions, the district court did not improperly "weigh the evidence," but rather properly interpreted the law.  The court did not err in ruling that the "Q" deduction did not apply to John's estate return in January 2013, and DKH was not professionally negligent in failing to claim the deduction.

The court also did not err in ruling that "Penning was not negligent in failing to wait to file the return until the amendment was enacted" because the "portion of the amendment that affected John's estate return was not added to the proposed amendment until May 19, 2013, months after Penning filed the return."  As the court said, "Even if Penning had been generally aware of proposed amendments to the law when she filed the return, the court will not subject her to liability for not anticipating changes that were months away from being considered."

III.

According to Allan, the district court erroneously granted summary judgment to HHW on his legal malpractice claim, which the court also dismissed for lack of expert support.  Discussing the specificity of Allan's expert affidavits, the court said:

> Allan retained Steven Franta as his legal malpractice expert.  Franta's first affidavit and attached report is focused solely on application of the Q deduction on the Trusts' tax returns.  Ohnstad Decl. Ex. 763, at 6-9. Franta opines that between 2011 and 2013, Minnesota estate and trust lawyers should have been aware of pending legislation relating to the

Q deduction and should have advised tax preparers to wait until the end of the legislative session before filing tax returns that could be affected by the legislation. *Id*. at 6. Relating specifically to this case, Franta opines that election of the Q deduction should have been "considered, reviewed, advised and made after the May 2013 law was passed" and that failure to do so breached the duty of care. *Id*. He does not specifically discuss Wetering or HHW's role, or lack thereof, in preparing the returns at issue, but instead speaks generally to the standard of care. *See id*. Indeed, he broadly states that "[t]he attorney who advised, counseled and collaborated with the fiduciaries and tax preparers of the estate who did not discuss or consider the 2013 pending legislation nor the actual law that passed and was enacted on May 23, 2013 did not meet the standard of practice or the standard of care and breached the duty of care." *Id*. at 7. But he does not establish that Wetering or anyone else at HHW advised, counseled, or collaborated with the fiduciaries and tax preparers of the estate. Franta also generally opines that the breach of the standard of care caused the Trusts to incur unnecessary legal fees and expenses and additional tax preparation fees that otherwise would have been avoided. *Id*. at 7-9.

Franta's supplemental report addresses the issue of conflicts of interest in attending to an estate, but again fails to clearly establish that Wetering or anyone else at HHW was responsible for or played any role in the estate tax filing. *See* Ohnstad Decl. Ex. 764. Indeed, Franta acknowledges that the "record does not disclose clearly who Mr. Wetering represented" and does not directly address Wetering's or HHW's conduct. *Id*. at 6. "An attorney who is sued for malpractice is entitled to a specific disclosure of the ways in which *that attorney* is alleged to have breached the standard of care." *Afremov v. Sulloway & Hollis, P.L.L.C.*, 922 F. Supp. 2d 800, 816 (D. Minn. 2013) (emphasis in original). That requirement is utterly lacking here. Moreover, Franta's opinion is vague and so broadly stated as to be meaningless.

. . . .

Franta's opinion falls woefully short of the specificity required to establish a duty, a breach of that duty, and damages caused by that breach. Indeed, he does not even establish that Wetering or anyone else at HHW provided legal services of any sort relating to the tax returns at issue. To the extent Allan claims that HHW committed malpractice

-8-

in establishing the Trusts in the first place, his expert provides no support for that contention. Dismissal of the legal malpractice claim is warranted on this basis alone.

As the district court ruled, Franta's initial report offers only conclusory and generalized statements about whether the statutory amendment was anticipated. But it does not mention HHW or Wetering, much less offer an opinion that HHW breached a minimum standard of care or was a "but-for" cause of Allan's damages. Rather, the report offers only an opinion that lawyers "involved" in estate tax filing in early 2013 should have waited until the end of the 2013 legislative session before filing a tax return involving the "Q" deduction.

Similarly, as the district court ruled, Fanta's supplemental report—issued a year and a half after the initial report—fails to address the community standard of care, how HHW breached it, and how that breach is a but-for cause of Allan's damages. To the contrary, Franta states that the "determination of breach, causation and damages is of course the purview of the factfinder in the matter." Franta's affidavit was insufficient because it consists of general conclusory statements that fail to establish HHW's involvement, how HHW breached any standard of care, and how HHW's alleged malpractice specifically caused Allan's damages. *See **Jerry's Enterprises, Inc. v. Larkin, Hoffman, Daly & Lindgren Ltd.***, 711 N.W.2d 811, 816, 819 (Minn. 2006) (holding that a legal malpractice claim must prove that but for the attorney's negligence, the plaintiff "would have been successful" in the underlying transaction). The district court properly granted summary judgment on Allan's legal malpractice claim.

Allan also contends the district court should have allowed him "the opportunity to cure" the affidavits. However, he did not move to cure the affidavits in district court, and he did not lack time to do so. The district court did not abuse its discretion in failing to *sua sponte* extend discovery deadlines to allow Allan to submit another expert affidavit. *See **Life Plus Int'l v. Brown***, 317 F.3d 799, 806 (8th Cir. 2003) ("We review the decisions of the district court regarding its management of the discovery process for an abuse of discretion.").

## IV.

Allan asserts that the district court erred in granting summary judgment to DKH and HHW on his aiding and abetting claim. Under Minnesota law, to establish a claim for aiding and abetting, the plaintiff must show: (1) the primary tortfeasor committed a tort that injured the plaintiff; (2) the defendant knew that the primary tortfeasor's conduct was a breach of duty; and (3) the defendant substantially assisted or encouraged the primary tortfeasor in that breach. *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019), *citing* *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999). "[W]here aiding and abetting liability is alleged against professionals," courts "narrowly and strictly interpret" these elements and "require the plaintiff to plead with particularity facts establishing each of these elements." *Witzman*, 601 N.W.2d at 187.

Allan alleges that DKH and HHW aided and abetted Carl (the primary tortfeasor) in breaching his fiduciary duties to the trusts by allowing him to pay below-market rents for the farmland. The district court dismissed the claim, stating:

> Even generously assuming Allan could establish the first two elements of an aiding and abetting claim, he has not established that HHW or DKH played any role in establishing—through any assistance or encouragement—the rental rates at issue. The record shows that DKH provided nothing more than routine professional services, which, alone, are insufficient to establish substantial assistance in carrying out tortious activity. . . . And, as noted, the record does not support any finding that HHW provided any professional services relevant to the circumstances at issue. As a result, summary judgment is also warranted on this claim.

As the district court ruled, there is no evidence that either DKH or HHW had any role in establishing or influencing the rents at issue. The district court properly granted summary judgment on the aiding and abetting claim.

V.

Allan contests the district court's dismissal of his RICO claim as untimely and meritless. The four-year statute of limitations for civil RICO claims begins when the plaintiff discovers or should have discovered the injury. *See **Rotella v. Wood***, 528 U.S. 549, 553, 556-68 (2000). The crux of Allan's RICO claim is that Carl and Michelle paid below-market rent for the farmland. The district court ruled the claim untimely. It noted that Allan "neither reasonably nor credibly argued that he was unaware of that issue or the damages he believes he incurred as a result until he added the RICO claim to this action on August 6, 2018." Specifically, he "began complaining about the rental rates as early as 2010 and it necessarily follows that he understood the nature of any related damages." The district court correctly granted summary judgment on the RICO claim.

VI.

Allan argues the district court should have granted summary judgment on the issues whether Carl—not a party in this case—breached a fiduciary duty and whether the court should declare specific rental rates for the farmland in 2011-2015. The district court did not err in ruling that these questions were not at issue and denying summary judgment. *See* **8th Cir. R. 47B**.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____