# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2266

_____

Quintero Community Association Inc., et al.

*Plaintiffs - Appellants*

v.

Federal Deposit Insurance Corporation as Receiver for Hillcrest Bank, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 10, 2015
Filed: July 8, 2015

_____

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Appellants are investors who suffered losses when an Arizona golf course and residential development failed, allegedly due to the fraud and mismanagement of the developer, Gary McClung. Unable to recover from the insolvent McClung, appellants filed this action in state court against the development's principal lender, Hillcrest Bank, and its directors, officers, and sole shareholder, asserting numerous claims. The Kansas Banking Commissioner closed Hillcrest Bank and appointed the

Federal Deposit Insurance Corporation (FDIC) as receiver. Some months later, the FDIC removed the case to federal court under 12 U.S.C. § 1819(b)(2)(B). The district court[1] denied appellants' timely motion to remand. Subsequently, the court dismissed fourteen of the sixteen counts for failure to state a claim, dismissed the FDIC because Hillcrest Bank's bankruptcy rendered appellants' claims against the Bank prudentially moot, and granted summary judgment to the remaining defendants on appellants' remaining count. Appellants appeal the denial of their motion to remand, the dismissal of fourteen counts for failure to state a claim, the grant of summary judgment on the final count, and the district court's refusal to permit an amendment to add an additional tort claim for spoliation. We affirm.

## I. Background

McClung's failed development was a golf course and residential subdivision in Peoria, Arizona, named Quintero Golf and Country Club (Quintero). Appellant Quintero Community Association (QCA) was the homeowners association for the subdivision and a property owner in Quintero. The remaining appellants are individuals who between 1999 and 2008 invested in Quintero by purchasing "Revenue Producing Membership Collateral Certificates" or by loaning money to McClung. In March 2005, Hillcrest Bank loaned McClung $31 million to finance Quintero's construction and issued a number of irrevocable standby letters of credit naming QCA as beneficiary. As beneficiary, QCA had the right to demand payment of a letter of credit in the event Quintero failed to complete the particular improvement specified in the letter of credit by a certain date.

Appellants' Omnibus Petition alleged that, by late 2006, McClung was unable to pay development contractors on time, and many had ceased working. Appellants

---

[1]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

alleged that defendants knew of McClung's financial distress but loaned him money anyway, contrary to sound banking practices, thereby "prolong[ing his] financial life" to appellants' detriment. They further alleged that defendants "concocted a scheme with McClung" to conceal his insolvency from appellants, banking regulators, and the Arizona Department of Real Estate (ADRE). The alleged scheme included "jimm[ying]" the Bank's books to make the Quintero project look to be in better financial health than it was, thereby assisting McClung's fraudulent communications to appellants, and allowing McClung to "sen[d] back" letters of credit in March 2007 contrary to their terms and ADRE requirements. On March 31, 2010, the ADRE suspended Quintero's public report due to McClung's failure to complete required infrastructure. See Ariz. Admin. Code § R4-28-B1203(E). As a result, appellants lost some or all of their investments.

In May 2010, appellants filed suit against Hillcrest Bank in Missouri state court. On October 22, 2010, the Kansas Banking Commissioner determined the Bank was "critically undercapitalized" and appointed the FDIC as receiver. In preparation for litigation, some Hillcrest Bank directors had caused Bank records to be copied onto digital storage media and sent to lawyers at the Bryan Cave law firm for review. The FDIC accepted appointment as receiver and demanded return of the copied files. Bryan Cave complied.

In January 2011, appellants filed a separate action in state court against Hillcrest Bank officers and directors and its holding company, Hillcrest Bancshares (the "Director Defendants"). The state court consolidated the two cases. On February 28, Hillcrest Bank filed a motion to substitute the FDIC as defendant. The state court granted the motion on March 1, but on May 7, appellants moved to vacate the substitution order because the Bank's motion was not properly served on the FDIC. The state court granted the motion and vacated its order of substitution on May 12.

Counsel for the FDIC entered an appearance in state court on May 24, filed a motion to substitute as a party for Hillcrest Bank on May 27, and filed a pleading opposing appellants' motion for default judgment against Hillcrest Bank on June 6. The state court granted the FDIC's motion for substitution on June 9. The FDIC removed the case to federal court under 12 U.S.C. § 1819(b)(2)(B) on September 6. Appellants moved to remand, arguing the FDIC failed to remove the action "before the end of the 90-day period beginning on the date . . . the Corporation is substituted as a party" in state court. 12 U.S.C. § 1819(b)(2)(B). The district court denied the motion to remand on December 6, 2011. Its subsequent rulings on the merits of appellants' claims were entered in January 2013 and in April and May of 2014.

## II. Denial of the Motion To Remand

Plaintiffs first argue the district court erred in denying their motion to remand because the FDIC's removal was untimely, and therefore the court lacked subject matter jurisdiction over the removed action. The state court granted the FDIC's motion to substitute as a party on June 9, 2011, and the FDIC removed the case to federal district court on September 6, ninety days later.[2] The FDIC contends that the removal is timely applying the plain meaning of § 1819(b)(2)(B). Plaintiffs argue, however, that the FDIC was "substituted as a party" for purposes of § 1819(b)(2)(B) prior to June 9 and thus the ninety-day removal window closed before September 6. Relying on FDIC v. North Savannah Properties, LLC, 686 F.3d 1254, 1259 (11th Cir. 2012), appellants argue that the FDIC is substituted as a party, and the removal period begins to run, when the FDIC takes "some affirmative action beyond its appointment as receiver." Here, they contend, the FDIC took the requisite "affirmative action" when it filed an entry of appearance on May 24, 2011, a motion for substitution on May 27, and an opposition to default judgment on June 6.

---

[2]Inclusive of June 9 and September 6. See 12 U.S.C. § 1819(b)(2)(B).

We need not decide whether removal was untimely, because even if the district court erred in failing to remand, that error would not be grounds to reverse at this stage of the litigation. In Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996), the Supreme Court considered whether the absence of complete diversity at the time of removal, required by 28 U.S.C. § 1441(b), necessitated vacating the district court's subsequent judgment, when complete diversity existed when final judgment was entered. Though grant of plaintiff's timely motion to remand "would have kept the case in state court," the Court concluded that, once "a diversity case has been tried in federal court . . . considerations of finality, efficiency, and economy become overwhelming." Caterpillar, 519 U.S. at 75. Accordingly, the Court held, "a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered." Id. at 64; see Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 573-75 (2004).

The "timeliness of removal is a procedural defect -- not a jurisdictional one." Moore v. N. Am. Sports, Inc., 623 F.3d 1325, 1329 (11th Cir. 2010). Here, when the FDIC became a substituted party, 12 U.S.C. § 1819(b)(2)(A) gave the district court subject matter jurisdiction, both at the time of removal and when final judgment was ultimately entered. Although federal jurisdiction in Caterpillar was based on diversity of citizenship, its rule has been applied to cases in which removal based on federal question jurisdiction was untimely, a motion to remand was denied, and the case proceeded to final judgment in federal court. See Wagner v. Campbell, 779 F.3d 761, 765 (8th Cir. 2015) ("we take careful note that jurisdiction would have existed in the district court from the inception of this 42 U.S.C. § 1983 suit"); Paluch v. Rambo, 453 F. App'x 129, 132 (3d Cir. 2011). We construe Caterpillar as a "categorical rule" that applies whether the case proceeded to final judgment after trial, or by summary judgment. Buffets, Inc. v. Leischow, 732 F.3d 889, 897-98 (8th Cir. 2013).

In this case, multiple claims and a complex factual background resulted in nearly four years of litigation after the district court denied appellants' motion to

remand based on a procedural defect. "To wipe out the adjudication postjudgment, and return to state court a case . . . satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." Caterpillar, 519 U.S. at 77. To do so here would be particularly unwarranted, as Congress intended § 1819(b)(2) "to afford the FDIC every possibility of having a federal forum within the limits of Article III." Adair v. Lease Partners, Inc., 587 F.3d 238, 242 (5th Cir. 2009). Accordingly, as in Wagner, 779 F.3d at 765, "[w]e decline to review the district court's decision on the motion to remand."[3]

### III. The Merits Rulings

After denying appellants' motion to remand, the district court dismissed fourteen counts for failure to state a claim in January 2013, leaving only a breach of contract claim against Hillcrest Bank and a conversion claim against the Director Defendants for copying Hillcrest Bank's records and transmitting them to attorneys at Bryan Cave. In September 2013, the FDIC determined that Hillcrest Bank in receivership lacked sufficient assets to make distributions to unsecured creditors. See 78 Fed. Reg. 56,228 (Sept. 12, 2013); 12 U.S.C. § 1821(d)(11)(A). In April 2014, the district court dismissed the FDIC as a party, concluding appellants' claims against the FDIC as the Bank's receiver were prudentially moot. See Adams v. RTC, 927 F.2d 348, 354 (8th Cir. 1991). Appellants do not appeal that ruling. Consequently, we need not review the court's earlier dismissal of appellants' claims against Hillcrest Bank. The following month, the district court granted summary judgment to the Director Defendants on the conversion claim, denied appellants' motion to amend the

_____

[3]At least two circuits have concluded that a case should be remanded to state court if a motion to remand was improperly denied, and the district court's final judgment is reversed on the merits. See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1080 (10th Cir. 1999). As we affirm the district court's rulings on the merits, we need not consider this question.

Omnibus Petition to add a claim for spoliation, and entered final judgment dismissing all claims.

**A. The Rule 12(b)(6) Dismissals.**  Appellants argue the district court erred in dismissing fourteen counts for failure to state a claim.  "We review *de novo* the district court's grant of a motion to dismiss."  Gorog v. Best Buy Co., 760 F.3d 787, 792 (8th Cir. 2014).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Id. (quotations omitted).

Like the district court, we find it "incredibly difficult to sift through [appellants'] 72 single-spaced pages and 340 numbered paragraphs to ascertain any coherent argument as to why [defendants] are liable."  The bulk of appellants' highly confusing Omnibus Petition consists of sheer speculation and conclusory allegations of defendants' wrongdoing.  At oral argument, counsel declined to prioritize appellants' fifteen claims of reversible error.  The district court discussed in detail why each count failed to state a claim.  We have little to add.

Appellants' brief on appeal argues at great length that the fourteen dismissed counts adequately pleaded claims that Hillcrest Bank breached fiduciary duties to appellants; aided and abetted McClung's fraudulent financial misrepresentations and his fraudulent and improper cancellation of letters of credit, which intentionally interfered with appellants' contract or business relations; negligently cancelled the letters of credit and negligently failed "to learn of and prevent" McClung's fraudulent activities; and conspired with McClung to engage in various vaguely pleaded torts.  These are claims against Hillcrest Bank we need not review.

The claims we need to review because they survived dismissal of the FDIC and Hillcrest Bank are appellants' claims against the Director Defendants, including Hillcrest Bancshares. As to these claims, appellants' brief says little beyond conclusory assertions such as, "The petition repeatedly avers that each defendant knew about McClung's bad financial condition, his scam attempts to get more financing, knew that the development had not been completed, and knew that the Bank had engaged in improper banking practices . . . to conceal its own bad financial condition and avoid being shut down by the FDIC."

The district court concluded that the allegations in appellants' Omnibus Petition were similarly deficient, failing to plead facts establishing plausible claims that each officer and director could be personally liable to appellants. Appellants fail to provide specific cites to the Omnibus Petition refuting this conclusion. "Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006). Likewise, without guidance, we will not mine a seventy-two-page complaint searching for nuggets that might refute obvious pleading deficiencies.

1. As to the claims that the Director Defendants breached fiduciary duties to appellants, they alleged no facts plausibly suggesting that each Hillcrest Bank officer, director, or shareholder consciously assumed to act as their fiduciaries in these business transactions. See Urias v. PCS Health Sys., Inc., 118 P.3d 29, 35 (Ariz. App. 2005); Denison State Bank v. Madeira, 640 P.2d 1235, 1243-44 (Kan. 1982).[4]

---

[4]Applying Missouri choice-of-law principles, the district court concluded Kansas law applied to breach of fiduciary duty and conversion claims, Arizona law applied to Arizona statutory claims, and there is no apparent conflict between Kansas and Arizona law regarding any other claim. This ruling is not contested on appeal.

Nor did they allege how each Director Defendant substantially assisted primary tortfeasor McClung in a breach of fiduciary duty that proximately caused appellants' injuries. See Cal X-Tra v. W.V.S.V. Holdings, LLC, 276 P.3d 11, 40 (Ariz. App. 2012) (elements of aiding and abetting); State ex rel. Mays v. Ridenhour, 811 P.2d 1220, 1231-32 (Kan. 1991) (same). "[D]irector and officer liability in breach of fiduciary duty actions is determined on an individual -- rather than a collective -- basis." In re Farmland Indus., Inc., 335 B.R. 398, 410 (Bankr. W.D. Mo. 2005).

Appellants also failed to plausibly allege how each Director Defendant aided and abetted breaches of fiduciary duty when undescribed letters of credit were allegedly canceled by either McClung or Hillcrest Bank. Under Arizona and Kansas law, "a director cannot be liable without some kind of personal participation in the tort or at least acquiescence by knowledge of the tort combined with a failure to act." Dawson v. Withycombe, 163 P.3d 1034, 1051 (Ariz. App. 2007); accord Kerns ex rel. Kerns v. G.A.C., Inc., 875 P.2d 949, 957-58 (Kan. 1994). Defendant Robert Sperry is alleged to have issued letters of credit to McClung and then agreed to "free up" funds when McClung asked that letters of credit be "sent back" to Hillcrest in March 2007. That does not plausibly allege that Sperry participated in *canceling* any letters of credit. The only letter of credit in the record on appeal expired of its own terms in March 2006. Once issued, an irrevocable letter may not be cancelled except according to its terms or with the consent of the beneficiary. See U.C.C. § 5-106(b). The allegedly cancelled letters of credit were not attached to the Omnibus Petition, and no facts were pleaded to support the conclusory assertion that all Director Defendants personally participated in canceling the letters of credit. Such "naked assertions, devoid of further factual enhancement," did not nudge appellants' claims "across the line from conceivable to plausible." Iqbal, 556 U.S. at 678, 680 (quotations omitted). Nor did appellants plausibly allege how cancellation of the letters of credit proximately caused their losses.

2.  Appellants failed to plead fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.  "Rule 9(b)'s particularity requirement for fraud applies equally to a claim for aiding and abetting."  E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 663 (8th Cir. 2012).  Thus, "the complaint must set forth the who, what, when, where, and how surrounding the alleged fraud," id. (quotation omitted), and specify "what was obtained as a result."  United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006).  Appellants' shotgun-style allegations of wrongdoing by all the Director Defendants "generally, in a group pleading fashion . . . do[es] not satisfy Rule 9(b)."  Streambend Props. II, LLC v. Ivy Tower Mpls., LLC, 781 F.3d 1003, 1013 (8th Cir. 2015).

The allegations in Count 4 did not come close to meeting this standard. Appellants entirely failed to plead facts plausibly showing that any Director Defendant knew of *any* of McClung's alleged fraudulent misrepresentations to appellants regarding Quintero's financial health, some of which occurred years before Hillcrest Bank began dealing with McClung.  See E-Shops, 678 F.3d at 664; Mays, 811 P.2d at 1232 (aiding and abetting liability requires knowledge of principal's tortious activity) Cal X-Tra, 276 P.3d at 40 (same).  Allegations cal the Director Defendants assisted McClung's fraud by jimmying the Bank's books and "execut[ing] transactions that gave the false appearance of financial viability" were far too vague to satisfy Rule 9(b).  Nor did appellants show how they relied on McClung's alleged misrepresentations and how that reliance caused them injury.  See Nordstrom v. Miller, 605 P.2d 545, 551-52 (Kan. 1980) (elements of fraud); Dillon v. Zeneca Corp., 42 P.3d 598, 603 (Ariz. App. 2002) (same).

3.  Regarding the claim in Count 8 that the Director Defendants assisted and participated in Hillcrest Bank's alleged negligent mismanagement, we agree with the district court that Count 8 failed to state a claim even if it plausibly alleged the Defendant Directors owed appellants a duty of care.  In general, banks owe no duty

of care to non-customers.  See Eisenberg v. Wachovia Bank, 301 F.3d 220, 225 (4th Cir. 2002); Gilbert Tuscany Lender, LLC v. Wells Fargo Bank, 307 P.3d 1025, 1028 (Ariz. App. 2013); N. Cent. Kan. Prod. Credit Ass'n v. Hansen, 732 P.2d 726, 730-31 (Kan. 1987).  Arguably, Hillcrest Bank and therefore the Director Defendants had some duty of care by reason of the Bank's complex relationships with appellants. But the Omnibus Petition did not plausibly allege breaches of a specific duty, for example, by showing how each Director knew of alleged problems with the Quintero loans, why each Director's knowledge created a duty to act, and how the Directors' failure to act was both the actual and proximate cause of appellants' injuries.  See Shirley v. Glass, 308 P.3d 1, 6 (Kan. 2013); Dawson, 163 P.3d at 1051; Kerns, 875 P.2d at 957-58; Wisener v. State, 598 P.2d 511, 512 (Ariz. 1979).

4. The remaining counts do not require extended discussion.  Count 2 failed to allege facts showing that any defendant canceled letters of credit with the intent to interfere with appellants' contractual or business relationships or caused appellants' losses.  See generally Restatement (Second) of Torts § 766.

Count 5 contained only conclusory and speculative assertions that an agreement existed between the Director Defendants and McClung to accomplish vaguely pleaded torts.  This was insufficient to support a claim of civil conspiracy. See Iqbal, 556 U.S. at 678; Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12, 36 (Ariz. 2002) (elements of civil conspiracy); Mays, 811 P.2d at 1226 (same).

Count 7, which charged the Director Defendants with aiding and abetting Hillcrest Bank in converting funds owed to two appellants, failed to allege facts showing the personal participation of any Director.  Count 9 alleged "Violations of Consumer Protection Law," and referenced "Arizona Consumer Protection Statutes," but did not explain *which* law was violated.  In substance, Count 9 simply re-alleged

the aiding-and-abetting-fraud claim in Count 4 with nothing approaching the particularity required by Rule 9(b). Count 16 asserted claims of tortious interference and aiding and abetting against Hillcrest Bank's sole shareholder, Hillcrest Bancshares, but failed to plausibly allege how Hillcrest Bancshares was involved.

The district court's Rule 12(b)(6) dismissals are affirmed.

**B. Summary Judgment on the Conversion Claim.** Count 1 alleged that the Director Defendants converted property in which appellants had an interest when defendants copied Hillcrest Bank's records and transferred the copies to Bryan Cave. The district court granted summary judgment dismissing this claim. Reviewing *de novo*, we agree. See Alexander v. Avera St. Luke's Hosp., 768 F.3d 756, 759 (8th Cir. 2014) (standard of review). Under Kansas law, conversion is "the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another *to the exclusion of the other's rights*." Bomhoff. v. Nelnet Loan Servs., Inc., 109 P.3d 1241, 1246 (Kan. 2005) (emphasis added). Assuming without deciding that QCA as well as Hillcrest Bank possessed a property interest in the Bank's records, the Director Defendants' mere copying of those records did not interfere with QCA's property interest. See Moeller v. Kain, No. 98,531, 2008 WL 4416042, at *6 (Kan. App. Sept. 26, 2008) (copying files and removing the copies is not conversion); accord Monarch Fire Prot. Dist. v. Freedom Consulting & Auditing Servs., Inc., 644 F.3d 633, 637 (8th Cir. 2011) ("Under Missouri law, a copy of a document cannot be converted where the owner has not been deprived of possession or prevented from utilizing the property.").

**C. Denial of Leave to Amend.** Finally, appellants argue that the district court abused its discretion in denying QCA leave to amend its petition to include a new tort claim for spoliation of evidence during litigation. See O'Neil v. Simplicity, Inc., 574 F.3d 501, 505 (8th Cir. 2009) (standard of review). The district court concluded that

QCA unduly delayed seeking leave to amend, defendants were prejudiced by the delay, and the amendment would likely be futile. We agree. The Supreme Court of Kansas has not yet recognized an independent tort of spoliation when a party destroys evidence that would have been useful to an adverse or potentially adverse litigant. See Superior Boiler Works, Inc. v. Kimball, 259 P.3d 676, 685-90 (Kan. 2011). There was no abuse of the district court's substantial discretion.

The judgment of the district court is affirmed.

_____